IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs October 2, 2001

## WALTER L. JOHNSON v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-23418      Chris Craft, Judge**

---

**No. W2001-00382-CCA-R3-PC - Filed October 26, 2001**

---

The Petitioner was convicted of especially aggravated  kidnapping and sentenced to twenty-five years incarceration.  The conviction and sentence were affirmed on direct appeal.  Subsequently, the Petitioner filed a petition for post-conviction relief, alleging that his attorney at trial was ineffective. The post-conviction court denied relief.  We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which GARY R. WADE, P.J., joined.  JOSEPH M. TIPTON, J., concurred in the result only.

Robert Little, Memphis, Tennessee, for the Appellant, Walter L. Johnson.

Paul G. Summers, Attorney General and Reporter; Laura McMullen Ford, Assistant Attorney General; William L. Gibbons, District Attorney General; and Katrina Earley, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

### I.  Background

The Petitioner, Walter L. Johnson, is presently serving a twenty-five-year sentence in the Tennessee Department of Correction for especially aggravated kidnapping.  On direct appeal, this Court summarized the facts of the underlying conviction as follows:

On January 27, 1994, between noon and one o'clock p.m., the victim in this case, Joyce Davis, stopped on her way home to use a pay phone on McLemore Street in Memphis.  While she was using the phone, the Defendant, whom she did not know, pulled up in a red pick-up truck and asked how she was doing.  She responded that she was fine.  The Defendant then got out of the truck, walked over to her, touched her with a knife, and told her, "I think you need to get in my truck." Fearful, the victim followed his commands.

The Defendant escorted the victim to the passenger side of his truck, and before he shut the door, he tore the knob from the window lever and threw it on the floorboard. Once inside the truck, the victim noticed that the passenger side door handle had also been removed. The Defendant proceeded to drive the truck across a bridge to Arkansas. During the drive, the Defendant asked the victim to raise up her skirt so that he could see her legs. In Arkansas, they drove on a dirt road to a secluded spot, where they stopped. The Defendant turned to the victim and said, "Bitch, I'm going to kill you." The victim began to cry, and the Defendant told her to stop crying so that she would not arouse the suspicions of the police should they drive by or stop.

The Defendant had the victim place one leg on the floorboard and the other on the seat of the truck, and he tore her pantyhose. His penis was outside of his pants; and as he tore the victim's pantyhose, he was ejaculating. He stated, "What is a piece of p____y compared to your life." He performed cunnilingus on the victim and then penetrated her, holding to the back of her neck a knife, which the victim described at trial as having a black handle and a long blade.

The Defendant penetrated the victim for approximately thirty minutes but stopped the rape when he heard another car approaching. The Defendant emerged from the truck to relieve himself, leaving the knife on the dash of the truck. When he got back into the truck, he drove to another location. At the second location, evidently the truck almost got stuck, and the Defendant decided to take the victim home. At that time, the Defendant placed the knife in the sun visor above his head.

During the abduction and rape, the Defendant referred to himself several times as "Willie." Several times he told the victim, "Call me Mr. Willie." One item of evidence introduced at trial was a piece of paper taken from the Defendant's residence on which the words "Willie call me" were written.

On the way back to Memphis, the Defendant apologized for raping the victim and asked if she had been raped before. Although the Defendant believed that he was taking the victim to her own home, the victim had the Defendant drop her off at a neighbor's house instead. The Defendant ordered her not to call the police and then backed the truck down the street. The victim was able to see three of the digits on the truck's license plate as he backed down the street. She testified at trial that she had seen the numbers "363," although she also admitted that she was not entirely sure she remembered the correct numbers. After the Defendant left, the victim went inside, called the police, and was taken to the Rape Crisis Center, where she submitted to medical testing.

The victim told police that the Defendant's truck had the word "Ford" on the outside and the word "Ranger" on the inside. She described it as having a red

exterior and some white trim, a darker panel on the driver's front side near the fender, and torn seats in the interior. She described her perpetrator as "a male black, approximately 200 pounds with a heavy build, a full gray beard, a blue flannel shirt, blue jeans, and some type of green shoes."

A few days after the abduction and rape, the victim saw the Defendant driving in the same truck, and she went into a nearby store to call the police. On this occasion, she was able to take down the full license tag number, "YHN-633," which she relayed to the police. However, evidently the victim was mistaken about the tag, because the license numbers that she provided belonged to a 1985 Ford pick-up which was not red and which was registered to a man named Victor McGee.

On August 18, 1994, a Memphis police officer who was working on the investigation in this case received information that he could find the Defendant near Vance and Orleans streets around six o'clock a.m. The officer went to the area at that hour but had no luck finding the Defendant. He returned the following morning at the same time and saw a red pick-up truck with ladder racks on the top driven by a man who matched the description of the victim's assailant. The license plate on the vehicle was "YHW-363." When he stopped the vehicle, the officer noted and photographed a knife which was stuck in the sun visor above the driver's seat. He then arrested the driver, whom he identified as the Defendant, Walter Johnson.

The police conducted two separate lineups in which the Defendant participated. Ms. Davis was present at the second lineup and picked the Defendant out of the lineup as her assailant. At the police station, she also identified the Defendant's truck as the vehicle driven by her assailant.

State v. Walter Johnson, No. 02C01-9801-CR-00007, 1998 WL 779610, at *1-2 (Tenn. Crim. App., Jackson, Nov. 10, 1998).

This Court affirmed the Petitioner's conviction and sentence, and permission to appeal to the Tennessee Supreme Court was denied. Id. at *1. The Petitioner filed a pro se petition for post-conviction relief, counsel was appointed to represent the Petitioner, and an amended petition for post-conviction relief was filed. Following an evidentiary hearing, the post-conviction court denied relief.

At the evidentiary hearing, the Petitioner alleged that his attorney at trial was ineffective for the following reasons: (1) that counsel failed to request jury instructions on the lesser-included offenses of aggravated kidnapping and kidnapping; (2) that counsel agreed to stipulate to certain facts without the Petitioner's consent; (3) that counsel failed to argue that a prior nolo contendere plea by the Petitioner in Mississippi should not be used to enhance the Petitioner's sentence; (4) that counsel failed to properly investigate the case; (5) that counsel failed to request a continuance of the trial when the Petitioner's "civilian clothes" were misplaced; and (6) that counsel failed to object to

the victim's testimony concerning a lineup identification of the Petitioner, at which the Petitioner alleges the victim was not present. The Petitioner does not raise issue (6) in this appeal.

In a detailed order containing findings of fact and conclusions of law, the trial court determined that the Petitioner had failed to prove by clear and convincing evidence that his trial counsel represented him ineffectively.

## II. Analysis

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-203. The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. Id. § 40-30-210(f). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which is overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001) (citing Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997)). A post-conviction court's conclusions of law, such as whether counsel's performance was deficient or whether that deficiency was prejudicial, are subject to a purely de novo review by this Court, with no presumption of correctness. Id. at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). This right to representation includes the right to "reasonably effective" assistance. Burns, 6 S.W.3d at 461.

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and that this performance prejudiced the defense, resulting in a failure to produce a reliable result, id. at 687; Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. Strickland, 466 U.S. at 690; State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. Strickland, 466 U.S. at 690; Cooper, 849 S.W.2d at 746; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462. Counsel should not be deemed to have

been ineffective merely because a different procedure or strategy might have produced a different result. Williams v. State, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980).

## A. Jury Instructions

The post-conviction court found that the Petitioner's trial attorney was not ineffective for failing to request a jury charge on lesser-included offenses. The post-conviction court correctly pointed out that the Petitioner's defense at trial was one of "identification." The post-conviction court determined that

> [t]here never was any question that the crime occurred or that a knife was used, but only whether or not Petitioner was the perpetrator. Failure to instruct on a lesser offense is not error where the record clearly shows that the Defendant was guilty of the greater offense, and the record is devoid of any evidence permitting an inference of guilt of the lesser offenses.

Additionally, as the State points out in its brief, the trial court was obligated to instruct the jury on any appropriate lesser-included offenses, with or without a request from counsel. See Tenn. Code Ann. § 40-18-110 (amended 2001). We conclude that the post-conviction court's factual findings and conclusions of law are correct. This issue is without merit.

## B. Stipulation

In his amended petition and in his brief, the Petitioner argues that his trial counsel was ineffective because counsel stipulated, without Petitioner's consent, that the DNA evidence obtained from the victim was insufficient to conclusively identify the Petitioner as the rapist. At the post-conviction hearing, no evidence was presented by the Petitioner to prove this allegation.

The post-conviction court found that the Petitioner relied on his trial attorney's judgment in not objecting to a stipulation concerning the fact that insufficient genetic material was available to obtain a DNA match. The post-conviction court found that the Petitioner showed no prejudice by the introduction of the stipulation at trial. We agree. This issue is without merit.

## C. Prior Conviction

Petitioner argues that his 1993 manslaughter conviction from the state of Mississippi should not have been admissible evidence at his sentencing hearing in this case. He alleges that in 1993, he entered a "no contest" plea to manslaughter in Mississippi, but complains that the plea was entered in the judge's chambers and that his attorney was absent. He faults his trial counsel for failing to argue for the exclusion of this conviction at the sentencing hearing in this case.

The post-conviction court determined that the Petitioner's 1993 manslaughter conviction was properly considered during sentencing in this case. It follows that the Petitioner's trial counsel was not ineffective for failing to argue that the manslaughter conviction could not be used to enhance the

Petitioner's sentence. Again, the post-conviction court's findings of fact and conclusions of law with regard to this issue are supported by a preponderance of the evidence. This issue is without merit.

## D. Investigation

The Petitioner complains that his trial attorney should have talked to the Petitioner's brother and a "Mr. Wooten" as a basis for his claim that trial counsel did not properly investigate the case. However, these witnesses did not testify at the post-conviction hearing, nor was any offer of proof made to show how the testimony of these witnesses might have affected the outcome of the Petitioner's trial. We agree with the post-conviction court that the Petitioner has failed to prove that trial counsel's investigation was inadequate. This issue is without merit.

## E. Jail Clothes

The Petitioner alleges that his trial counsel was ineffective for failing to obtain a continuance when the Petitioner's "civilian clothes" were apparently misplaced during the multi-day trial. The post-conviction court determined that "in this case, however, Petitioner appeared in different clothes each day of trial, and the trial judge found that there was nothing about his clothing that the average person would equate with 'prison garb.' " The post-conviction court determined that although at some point during the trial the Petitioner's "civilian" clothes were misplaced, the Petitioner was not prejudiced by the original trial court's decision to proceed with the trial. Although the Petitioner complained that his attorney "could have did something a little more, you know, or asked them to try and locate my clothes," the post-conviction court determined that the Petitioner suffered no prejudice that "might have affected the outcome of the trial." We agree.

Having thoroughly reviewed Petitioner's claim that he was ineffectively represented at trial, and finding substantial evidence to support the post-conviction court's findings to the contrary, we conclude that the judgment of the post-conviction court is AFFIRMED.

_____
ROBERT W. WEDEMEYER, JUDGE